UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
ROBERT SILVERMAN OLIVERAS,

                    Plaintiff,

                                          MEMORANDUM & ORDER
          -against-                       19-CV-6462 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------X
APPEARANCES
For Plaintiff:        Daniel Adam Osborn, Esq.
                      Osborn Law
                      43 West 43rd Street, Suite 131
                      New York, New York 10036

For Defendant:        Megan Jeanette Freismuth, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York 11722

SEYBERT, District Judge:

          Robert Silverman Oliveras ("Plaintiff") brings this

action pursuant to Section 205(g) and/or Section 1631(c)(3) of the

Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), challenging

the Commissioner of Social Security's (the "Commissioner") denial

of his application for social security disability insurance

benefits. (Compl., ECF No. 1.) Pending before the Court are the

parties' cross-motions for judgment on the pleadings.[1] For the

---

[1] See Pl. Mot., ECF No. 13; Pl. Br., ECF No. 13-1; Pl. Reply, ECF
No. 16; Comm'r Mot., ECF No. 14; Comm'r Br., ECF No. 15; Comm'r
Reply, ECF No. 17.

following reasons, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

BACKGROUND[2]

I.   Procedural History

On June 23, 2016, Plaintiff filed for disability insurance benefits, alleging that since June 3, 2016, Hodgkin's lymphoma and anxiety have rendered him disabled. (R. 130-43.) After Plaintiff's claim was denied on October 13, 2016, he requested a hearing before an Administrative Law Judge ("ALJ") (R. 58-63, 68-70). On October 3, 2018, Plaintiff, accompanied by counsel, appeared for the hearing at which an impartial medical expert, Michael Buckwalter, M.D., and a vocational expert, Frank Lindner, testified. (R. 25-40.) In a decision dated October 23, 2018, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10-18.) More specifically, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (R. 12-13.) On September 18, 2019, the Social Security

---

[2] The background is derived from the administrative record ("R.") filed by the Commissioner on March 18, 2020. (R., ECF No. 11.) For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion is limited to the challenges and responses raised in the parties' briefs.

Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.  (R. 1-6.)

Plaintiff timely filed this action on November 15, 2019 and moved for judgment on the pleadings on July 17, 2020.  (See Pl. Mot.)  On September 15, 2020, the Commissioner filed an opposition and cross-motion for judgment on the pleadings.  (See Comm'r Mot.)

II.  Evidence Presented to the ALJ

The Court first summarizes the hearing testimony before turning to Plaintiff's medical records.

A.  Plaintiff's Testimonial Evidence

At the time of the October 3, 2018 hearing, Plaintiff was twenty-five years old and had completed high school and some college education.  (R. 28.)  He testified that he was not working and that he had last worked in 2017.  (R. 28-29.)  Plaintiff had worked full-time as a telecommunications cable installer for a cable company but stopped after he was diagnosed with stage four Hodgkin's lymphoma in June 2016.  (R. 29, 35.)  He received chemotherapy treatment at Memorial Sloan Kettering until he went into remission in September 2016.  (R. 32.)  Plaintiff continues to meet with his oncologist every three months.  (R. 32.)  In 2017, Plaintiff tried to work; however, he stopped after three months

because he was taking Valium and Oxycodone and was "under the influence 24 hours a day." (R. 29-31.)

Plaintiff also testified that he continues to see his psychologist at Sloan Kettering because he became "very depressed" and suicidal after his cancer diagnosis, his mother's cancer diagnosis, and the death of his grandparents. (R. 32-33.) Plaintiff explained that his psychiatrist prescribed "heavy medication" rendering him is unable to drive and causing short-term memory difficulties. (R. 33-34.) Plaintiff testified that he has "very few" friends. (Id.) However, since March 2018, he has been able to work and has been "continuously been looking for a job," even though he is "scared to go back[.]" (R. 33.)

B. Medical Expert Testimony

At the hearing, medical expert Michael Buckwalter, M.D., reviewed Plaintiff's file, listened to Plaintiff's testimony, and provided the ALJ with an impartial opinion. (R. 34-35.) Dr. Buckwalter observed that Plaintiff was diagnosed with stage four Hodgkin's lymphoma in May 2016 and that chemotherapy treatments were completed "just under four months from the onset date." (R. 35.) After an impartial review of the record, Dr. Buckwalter testified that, in his "expertise," he did not see a "disability lasting a whole year." (R. 35-36.) He further testified that while cancer is a serious illness, a person can undergo treatment and recover such that while in recovery, a prior cancer diagnosis

4

has "a minimal effect on [a person's] ability to work."  (R. 36.)
He also testified that he did not see any evidence that four months
of chemotherapy impaired or limited Plaintiff's ability to work.
(R. 36.)

Plaintiff's attorney sought to question Dr. Buckwalter
regarding the effects of Plaintiff's mental health condition on
his ability to work.  (R. 36-37.)  However, the ALJ did not permit
this line of questioning, finding it not "appropriate" because
Dr. Buckwalter is not a psychiatrist.  (R. 37-38.)

C.   Medical Evidence[3]

The ALJ also reviewed Plaintiff's medical records
supporting his Hodgkin's lymphoma diagnosis, beginning in May
2016,[4] and anxiety diagnosis.

Plaintiff was diagnosed with Hodgkin's lymphoma on June
3, 2016 and, by letter dated June 13, 2016, Dr. Noy wrote that
Plaintiff would need to be excused from work for a period of nine
months: six months for treatment and an additional three months

---

[3] Although the Court has reviewed the entire medical record, the
records relevant to this motion derive from: (1) Ariela Noy, M.D.,
an oncologist; (2) Jeffrey Freedman, M.D., a psychiatrist; (3) Dr.
Wells, M.D., state agency medical consultant; and (4) E. Selesner,
Ph.D., a psychologist and state agency medical consultant.

[4] Although he was diagnosed on June 3, 2016, Plaintiff presented
with symptoms in April 2016.  Thus, the Court uses the earlier
date in assessing whether Plaintiff's impairments have lasted for
a continuous period of not less than twelve months.  (R. 216-25,
234-37.)

for recovery.   (R. 229, 234-37.)   On July 4, 2016, Plaintiff completed an Adult Function Report.   (R. 169-78.)   Although Plaintiff stated that his condition "makes [him] sleep all day," he also indicated that his condition does not cause a problem with his personal care and that he is able to dress, bathe, care for himself, shave, feed himself, and use the toilet.   (R. 170-71.) Plaintiff also reported that he does not require special help or reminders in taking medication, grooming, or with personal needs. (R. 171.)   He reported that he prepares his meals and goes outside daily, that he walks, drives, rides in a car, and takes public transportation.   (R. 172.)   Plaintiff also indicated that he shops online and in-person and that he purchases, among other things, clothing and food.   (R. 172.)   Plaintiff stated that is able to count change and to handle a savings account.   (R. 173.) Additionally, he watches television and plays video games on a daily basis and "hang[s] out" and socializes with others two to three times a week.   (R. 173.)   He reported that he does not have problems getting along with family, friends, or neighbors.   (R. 174.)   Plaintiff stated he had no issues standing, sitting, kneeling, or squatting, but would get "out of breath faster due to tumor and illness" when walking or climbing stairs.   (R. 174.)   He did not report any issues with using his hands, seeing, hearing, or talking.   (R. 174-75.)   Similarly, he did not report problems with paying attention, finishing what he starts, following spoken

6

or written instructions, remembering things, or getting along with other people in positions of authority such as bosses, among others. (R. 176.)

Plaintiff reported that he developed anxiety when he "was diagnosed with cancer at such a young age" and that it causes him to experience "fear," "paranoia," and a "rapid heart rate." (R. 176.) He indicated that these attacks/symptoms occur once or twice a day and last for a "couple of hours." (R. 177.) He was prescribed and takes medication to control his anxiety and that once his symptoms subside, he can continue to function. (R. 177.) Plaintiff also indicated that his anxiety has resulted in difficulties in socializing with others. (R. 174, 177.) On July 14, 2016, Plaintiff met with Dr. Freedman, a psychiatrist, to address chemotherapy side effects and anxiety.[5] (R. 325.) A mental status evaluation reflected that Plaintiff had good insight and judgment, he was well-oriented, and his attention span and memory were intact. (R. 326.) Plaintiff's mood was anxious, his thought process was logical, coherent, goal directed, and

---

[5] Although the earliest treatment records from Dr. Freedman are dated July 14, 2016 (R. 325-26), it appears Plaintiff may have treated with him prior to that date because he indicated in the Adult Function Report that he had been prescribed Clonazepam by a "Dr. Friedman." (R. 177-78.) However, he also stated that he saw a psychologist after his cancer diagnosis when he "couldn't control [his] anxiety." (R. 176.) Upon the record before the Court, June 3, 2016, the date of Plaintiff's cancer diagnosis, is the earliest date that he would have started treatment for his anxiety.

organized, and Dr. Freedman noted that he was "clearly traumatized by" his diagnosis.  (Id.)  Dr. Freedman diagnosed Plaintiff with "adjustment disorder with anxiety" and assessed his anxiety as "related to dealing with cancer."  (Id.)

On August 10, 2016, following two cycles of chemotherapy, a PET scan revealed no evidence of active disease. (R. 244-49, 266-67, 270, 301-02.)  On August 15, 2016, Plaintiff saw Dr. Noy who rated his stress level as a 9.5 out of 10.  (R. 265, 300.)  Dr. Noy noted that Plaintiff's medical history included adjustment disorder with anxiety, from May through June 2016.  (R. 265, 300.)  Upon examination, Dr. Noy noted that Plaintiff's mood and affect were normal, he would stop taking rivaroxaban by September 2016, and that Plaintiff should continue supportive oncology care with Dr. Freedman.  (R. 266, 270, 301, 305.)  Dr. Noy observed that Plaintiff "seemed a bit relieved today with outcome of PET scan."  (R. 270, 305.)

On August 18, 2016, Plaintiff saw Dr. Freedman and reported that he was pleased with the results of his cancer treatment, but remained worried about recurrence.  (R. 297-98.) Dr. Freedman observed that Plaintiff's mood was euthymic and opined that "[a]nxiety may decrease based on excellent news received about PET scan."  (R. 298.)  He noted that Plaintiff's thought process was logical, coherent, goal directed, and organized, his memory and attention span were intact, and his insight and judgment were

good.  (R. 298.)  Dr. Freedman advised Plaintiff to continue taking Klonopin, medication for anxiety.  (R. 298.)

Plaintiff continued chemotherapy (R. 291), but on August 29, 2016, nurses could not secure a peripheral IV for the medication; thus, they planned to place a peripherally inserted central catheter ("PICC") line to administer the medication to Plaintiff.  (R. 291, 295.)  On September 2, 2016, a PICC line was inserted in Plaintiff's left arm.  (R. 333.)  The same day, Plaintiff called Dr. Freedman and reported increased anxiety related to the PICC line and raised concerns that he would run out of Klonopin over the weekend.  (R. 290.)  Dr. Freedman renewed Plaintiff's prescription and noted that they would address the anxiety at their next meeting.  (Id.)

On September 13, 2016, Plaintiff saw Dr. Freedman and discussed his increased anxiety related to the PICC line.  (R. 286.)  Plaintiff reported that his anxiety was not as well controlled with Klonopin and wondered if Valium would help.  (R. 286.)  Dr. Freedman recommended Lexapro and noted that "[f]inances is another stressor and he is in the process of applying for disability."  (R. 286.)  Dr. Freedman noted that Plaintiff had good insight and fair judgment; mood was anxious; affect of full range; attention span intact; thought process was logical, coherent, goal directed, organized; memory intact; and he was well-oriented.  (R. 286-87.)

On September 14, 2016, Plaintiff saw Dr. Noy for a fourth chemotherapy cycle.  (R. 277.)  Plaintiff reported high stress (R. 278) and Dr. Noy noted that Plaintiff should continue supportive care with Dr. Freedman (R. 284).  On September 27, 2016, Plaintiff saw Dr. Freedman for a fourth session.  (R. 275-76.)  Dr. Freedman noted that Plaintiff had tolerated Lexapro for two weeks without side effects.  (R. 275.)  Plaintiff reported that he did not feel a "clear benefit" from the medication and Dr. Freedman explained it may take at least six to eight weeks to "work."  (R. 275.) Plaintiff reported feeling "irritable at home and seem[ed] to displace anxiety on relatively trivial things."  (R. 275.) Dr. Freedman noted that Plaintiff had good insight and fair judgment; anxious mood; affect of full range; thought process was logical, coherent, goal oriented, and organized; he was well-oriented; attention span was intact; and memory was intact.  (R. 276.)  Dr. Freedman continued his diagnosis of adjustment disorders with anxiety "related to dealing with cancer."  (R. 276.)

After September 27, 2016, there are no medical records or treatment notes concerning Plaintiff's anxiety or mental state from any provider.

D.   Opinion Evidence

On October 12, 2016, state agency psychological consultant Dr. Selesner reviewed the record and opined that Plaintiff had: mild restriction of activities of daily living;

moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (R. 47.) Dr. Selesner listed Plaintiff's anxiety disorder as "severe" and secondary to lymphoma. (R. 46.)

Dr. Freedman submitted a "Medical Assessment of Ability to do Work Related Activities," dated September 20, 2018, and opined that from May 2016 through March 2018, Plaintiff had a combination of severe medical and psychiatric problems "that made it impossible for him to work." (R. 339.) Dr. Freedman assessed that Plaintiff had: poor or no ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisor(s), deal with work stresses, function independently, or maintain attention/concentration due to anxiety. (R. 339-40.) He further opined that Plaintiff had poor or no ability to understand, remember and carry out job instructions, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. (R. 340.) According to Dr. Freedman, Plaintiff's anxiety affected his ability to drive and to maintain a regular work schedule. (R. 340.)

III. <u>The ALJ's Decision</u>

The ALJ considered and applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from June 6, 2016, the alleged disability-onset date, through the date of the decision.  (R. 10-18.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 6, 2016.[6]  (R. 12.)  At step two, the ALJ determined that Plaintiff had medically determinable impartments: history of Hodgkin's lymphoma and anxiety.  (R. 12.)  However, the inquiry stopped at step two because the ALJ held that the "impairment or combination of impairments" did not significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months (R. 12-13) and therefore, he "does not have a severe . . . combination of impairments."  (R. 12-13 (citing 20 C.F.R. 416.921 <u>et seq.</u>); <u>see id.</u> at 12-18.)

In reaching this conclusion, the ALJ found that Plaintiff's cancer and anxiety diagnoses "could reasonably be expected to produce the alleged symptoms," but his statements about the "intensity, persistence, and limiting effects" of his symptoms were inconsistent with the medical evidence.  (R. 13-14.)

---

[6] Although Plaintiff worked as a part time cable company installer in 2017, the "income was under the threshold requirement of substantial gainful activity."  (R. 12.)

Specifically, the ALJ concluded that Plaintiff's testimony regarding his symptoms were inconsistent because "while [Plaintiff] was diagnosed with Hodgkin's lymphoma in June 2016, treatment notes reflect that claimant [ceased] treatment after a successful recovery in September 2016." (R. 15.)

Further, the ALJ found that Plaintiff's anxiety "is not as severe as he alleges as treatment notes are not contained in the record past September 2016" and treatment notes from Dr. Freedman "reflect that treatment was infrequent and conservative as claimant was maintained with medication." (Id.) The ALJ observed there are no treatment notes to support Plaintiff's testimony that his anxiety causes him to experience a rapid heart rate and paranoia. (R. 15 (citing R. 169-78, 272-338).) The ALJ also noted that Plaintiff reported in an Adult Function Report that he drives, has no problem paying attention, can finish what he starts, can follow written and spoken instructions, and has no memory issues, which contradicts his testimony that he is not able to drive, has problems with his memory, and has no short-term memory. (R. 15 (citing R. 169-78).) According to the ALJ, Plaintiff's responses in the Adult Function Report are consistent with the treatment notes, which consistently report that Plaintiff "is well oriented and his attention span, immediate memory, short-term and remote memory are intact." (R. 15 (citing R. 272-338).)

13

The ALJ considered Plaintiff's representation that his medication and illness prevent him from working, but observed there are no treatment notes indicating that he "complained of any medication side effects including drowsiness, memory loss or difficulty concentrating." (R. 16.)  To that extent, the ALJ noted that Plaintiff self-reported in the Adult Function report that he can handle the activities of daily living, including personal care and taking his medication, preparing his own daily meals, walking, riding in a car, taking public transportation, going out and going out alone, shopping for food and clothes, counting change and handling a savings account, socializing with others two to three times per week, and getting along with family and friends. (R. 16 (citing R. 169-78).)

As for the opinion evidence, the ALJ afforded little weight to Dr. Freedman's opinion, finding it "an overstatement of claimant's limitations and not supported by the medical evidence of record." (R. 16.)  The ALJ also afforded little weight to Dr. Noy's opinion that Plaintiff would require six months of cancer treatment and three months for recovery, given that his actual treatment lasted less than four months. (R. 16 (citing R. 229).) Dr. Wells, a state agency medical consultant, opined that Plaintiff "can lift 10 pounds frequently 20 pounds occasionally stand and walk for 6 hours per day no other limitations." (R. 17 (citing R. 46).)  The ALJ assigned this opinion "little weight" because "there

14

are no records to confirm any limitations from claimant's alleged impairments past September 2016." (R. 17.)

The ALJ afforded "great weight" to the opinion of Dr. Buckwalter, a medical expert who reviewed the record and "opined there is no evidence of any disability lasting a whole year," finding it "consistent with and supported by the medical evidence in the record." (R. 16.)  The ALJ also afforded "great weight" to consultative examiner Dr. Selesner's opinion that Plaintiff "is capable of following supervision and relating appropriately with co-workers[][,] [c]apable of sustaining attention and responding to changes in the work setting." (R. 17 (citing R. 52).)  The ALJ found this opinion to be consistent with the medical evidence and treatment records, specifically because treatment records consistently report that Plaintiff "is well-oriented and his attention span, immediate memory, short-term and remote memory are intact." (R. 17 (citing R. 272-338).)

Finally, because anxiety is a "medically determinable mental impairment," the ALJ analyzed "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1)," also known as the "paragraph B criteria." (R. 17.)  Upon review of the record, the ALJ concluded that Plaintiff has "no limitations" in (1) "understanding, remembering, or applying information";

15

(2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) in the ability to adapt or manage himself. (R. 17-18.) Thus, the ALJ found that Plaintiff's "medically determinable mental impairment causes no more than 'mild' limitation[s] in any of the functional areas, it is nonsevere." (R. 18 (citing 20 CFR 416.920a(d)(1)).)

Accordingly, "after considering the evidence of record," the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities" and, therefore, "has not been under a disability, as defined in the Social Security Act, since June 6, 2016, the date the application was filed (20 C.F.R. § 416.920(c))." (R. 14, 17-18.)

DISCUSSION

I.    Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (citations omitted). If the Court finds that substantial evidence exists to support the decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II.  Analysis

There is no dispute that Plaintiff has a history of Hodgkin's lymphoma and anxiety.  The parties agree that because Plaintiff has been in remission since September 2016, Plaintiff's cancer diagnosis does not constitute a severe impairment that lasted for twelve consecutive months.  See 42 U.S.C. § 423(d)(1)(A) (an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment must be one which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").  Thus, the parties dispute whether Plaintiff's anxiety impairment, alone or in tandem with his cancer diagnosis, significantly limited his ability to perform basic work-related activities for a period of twelve consecutive months. (See Pl. Br. at 5; Comm'r Br. at 5.)  Plaintiff argues that "[t]he ALJ erred at step two by failing to give controlling weight to the opinion of [his] psychiatrist Dr. Freedman when assessing the severity of [his] anxiety." (Pl. Br. at 10-15.)  The Commissioner disagrees and argues that the ALJ's disability determination is supported by substantial evidence.  (Comm'r Br. at 9.) Specifically, the Commissioner argues that the "ALJ properly evaluated Plaintiff's impairments at Step two and throughout the sequential evaluation." (Comm'r Br. at 10-13.)

A. <u>The ALJ Violated the Treating Physician Rule</u>[7]

The "treating physician rule" provides that the medical opinions and reports of Plaintiff's treating physicians are to be given "special evidentiary weight." <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998); <u>see</u> 20 C.F.R. § 404.1527(c)(2). However, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." <u>Molina v. Colvin</u>, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted).

When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." <u>Schnetzler v. Astrue</u>, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good

---

[7] "[T]he Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." <u>Williams v. Colvin</u>, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017); <u>see also</u> 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

reasons' for not crediting the opinion of a [plaintiff's] treating physician." Id. at 287.  An ALJ provides "'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence.").

Here, the ALJ did not provide good reasons for assigning "little weight" to Dr. Freedman's opinions.  Indeed, "the ALJ made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in [Plaintiff's] mental health--one of the motivations behind [the] procedural requirement of explicit consideration of 'the frequency, length, nature, and extent of a physician's treatment.'" Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (quoting Selian v. Astrue, 708 F.3d 409, 418-19 (2d Cir. 2013)).  "This failure is especially relevant here because the first [ ] factor [the length of the treatment relationship and frequency of the examination], and therefore evidence supporting its satisfaction, is of heightened importance in the context of [Plaintiff's] claimed impairment": anxiety.  Id.  Moreover, "'[c]ycles of improvement and debilitating symptoms of mental

illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a [plaintiff] is capable of working.'" Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)). "When viewed alongside the evidence of the apparently cyclical nature" of Plaintiff's mental impairments, and the absence of two-years' worth of records (discussed infra), the ALJ's "cherry-picked treatment notes do not provide 'good reasons' for minimalizing" Dr. Freedman's opinion. Id.

Moreover, to the extent that the ALJ discounted Dr. Freedman's opinion because his records "reflect that treatment was infrequent and conservative as claimant was maintained with medication" (R. 15), that is "not a 'good reason' to reject a treating physician's medical opinion." Destina v. Berryhill, No. 17-CV-2382, 2018 WL 4964103, at *6 (E.D.N.Y. Oct. 15, 2018) (citing Morris v. Colvin, No. 12-CV-5600, 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016)). "In this Circuit, the opinion of a treating physician is not 'to be discounted merely because he has recommended a conservative treatment regimen.'" Id. (quoting Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)) (subsequent citations omitted). "Such a reason 'falls far short of the standard for contradictory evidence required to override the

weight normally assigned the treating physician's opinion.'" Id. (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).

Further, the ALJ committed error in assigning "great weight" to Dr. Selesner's and Dr. Buckwalter's opinions that were based solely on their review of the record.[8] First, the ALJ did not permit Plaintiff's attorney to question Dr. Buckwalter regarding Plaintiff's mental impairments because the ALJ did not "find it appropriate . . . to ask [such questions to] a doctor who [is] not" a psychiatrist. (R. 37.) Accordingly, Dr. Buckwalter's opinion that "there is no evidence of any disability lasting a whole year" cannot form the basis of the ALJ's determination that Plaintiff's mental impairment did not persist for a year. Second, "in the context of evaluating a mental disability, 'it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient.'" Maldonado v. Comm'r of Soc. Sec., No. 12-CV-5297, 2014 WL 537564, at *15 (E.D.N.Y. Feb. 10, 2014) (quoting Fofana v. Astrue, No. 10-CV-0071, 2011 WL 4987649, at *20 (S.D.N.Y. Aug. 9, 2011)). As such, "the conclusions of a physician who

---

[8] In reviewing Dr. Selesner's assessment, it is not entirely clear the records he reviewed. However, it is clear Dr. Selesner did not review and reconcile Dr. Freedman's opinion evidence. (See R. 51 (Dr. Selesner noting that "[t]here is no indication that there is opinion evidence from any source").)

merely reviews a medical file and performs no examination are entitled to little, if any, weight." Id. (internal quotation marks and citation omitted). Therefore, it was error for the ALJ to assign Dr. Selesner's and Dr. Buckwalter's assessments regarding Plaintiff's mental impairment "great weight" because they did not examine or treat Plaintiff and "relied solely on the medical records in the administrative record to form" their opinions. Id.

Thus, the ALJ did not follow the treating physician rule and on remand the ALJ should "endeavor to obtain enough information to determine whether the opinion" of Dr. Freedman is entitled to controlling weight. Murphy v. Saul, No. 17-CV-1757, 2019 WL 4752343, at *7 (E.D.N.Y. Sept. 30, 2019); Balodis v. Leavitt, 704 F. Supp. 2d 255, 268 (E.D.N.Y. 2010).

B. Substantial Evidence Does Not Support the ALJ's Findings with respect to Plaintiff's Anxiety

The ALJ erred in finding that Plaintiff's anxiety is not a severe impairment under the second step of the analysis. The Court cannot ignore the two-year gap between September 27, 2016, the date of the last mental health treatment note (R. 275-76), and September 20, 2018, the date of Dr. Freedman's opinion. Indeed, the ALJ observed the same, noting that "[w]hile claimant testified he still sees a psychologist, there are no notes in the record to reflect current treatment" and that "[w]hile claimant alleges anxiety as an impairment, it is not as severe as he alleges as

treatment notes are not contained in the record past September 2016." (R. 15.) "The ALJ, unlike a judge in a trial, must [ ] affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Fernandez v. Comm'r of Soc. Sec., No. 19-CV-2294, 2020 WL 6746832, at *8 (E.D.N.Y. Nov. 16, 2020) (quoting Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004), as amended on reh'g in part, 416 F.3d 101 (2d Cir. 2005)). "Where, as here, there are gaps in the administrative record, remand is appropriate for the Commissioner to further develop the evidence." Id. (citing Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999)).

As stated above, at the hearing and in the decision, the ALJ explicitly identified an absence of mental health treatment notes after September 2016. Moreover, the ALJ did not engage a "consultative examiner who focused, in any meaningful way, on Plaintiff's mental health." Fernandez, 2020 WL 6746832, at *8. Indeed, consultative examiner Dr. Selesner reviewed the record and issued an opinion regarding Plaintiff's mental residual functional capacity. The Second Circuit has "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" Estrella, 925 F.3d at 98 (quoting Selian, 708 F.3d at 419). "This concern is even more pronounced in the context of mental illness where," as here, the consultative examiner did not meet with Plaintiff and relied on an undeveloped

record.  Id.  Accordingly, "the ALJ evaluated the 'objective evidence,'" and drew conclusions regarding Plaintiff's impairment and credibility "from an incomplete record."  Id.  It necessarily follows that remand is appropriate because there was a clear gap in the record as to Plaintiff's mental health status.

CONCLUSION

For the foregoing reasons, Plaintiff's motion (ECF 13) is GRANTED and the Commissioner's motion (ECF 14) is DENIED.  This matter is REMANDED for proceedings consistent with this Memorandum and Order.  The Clerk of the Court is directed to mark this case CLOSED.


SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.


Dated:    March  15 , 2021
          Central Islip, New York